**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Nicole Duchnik, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| Tops Markets, LLC, | ) JURY DEMANDED |
| | ) |
| Defendant. | ) |

<u>**NOTICE OF REMOVAL**</u>

Defendant Tops Markets, LLC ("Tops" or "Defendant") files this Notice of Removal of this action from the Supreme Court of the State of New York, County of Niagara, to the United States District Court for the Western District of New York, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453.

**I.     INTRODUCTION**

1.      Plaintiff Nicole Duchnik ("Duchnik" or "Plaintiff") alleges that Tops has violated New York General Business Law §§ 349 and 350 ("GBL"), breached express and implied warranties, violated the Magnuson-Moss Warranty Act, made negligent misrepresentations, committed fraud, and been unjustly enriched by selling a Top-brand ground coffee product (the "Product") in containers that incorrectly state the number of cups of coffee each container yields.

2.      The complaint was filed in the Supreme Court of the State of New York, County of Niagara on or about January 31, 2022, a true and correct copy of which is attached hereto as **Exhibit A**.

3.      Plaintiff Nicole Duchnik is a citizen of North Tonawanda, Niagara County, New York. (*See* Compl. ¶ 39.)

4.      At the time this lawsuit was filed and at all times since, Tops was and is a limited

liability company organized under the laws of the State of New York with its principal place of business in New York. (Compl. ¶¶ 34, 36, 40.) Tops' members are Tops Markets Holdings Corporation 1 and Tops Markets Holdings Corporation 2. Both are incorporated in Delaware and have their principal place of business in New York. Therefore, at the time this action was filed and at all times since, Defendant was a citizen of Delaware and New York. 28 U.S.C. § 1332(c)(1).

5.     Duchnik seeks monetary damages, statutory damages, costs and expenses, attorneys' fees, restitution, disgorgement, injunctive relief, and other relief for herself and on behalf of a proposed class. (Compl., Prayer for Relief, ¶¶ 2-6.)

6.     The putative class consists of "all New York residents who purchased the Product during the statutes of limitations for each cause of action alleged only in the State of New York." (Compl. ¶ 57.)

7.     This case may be removed pursuant to 28 U.S.C. § 1332(d) as it is a proposed class action in which the putative class consists of at least 100 members, there is minimal diversity, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

**II.     VENUE**

8.     Venue is proper in this Court under 28 U.S.C. § 1441(a) because the removed action was filed in the Supreme Court of the State of New York, County of Niagara, a court encompassed by the Western District of New York.

**III.     REMOVAL PURSUANT TO CLASS ACTION FAIRNESS ACT OF 2005**

9.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). Under the Class Action Fairness Act ("CAFA"), federal district courts have original jurisdiction when: (1) the putative class consists of at least 100 members; (2) the citizenship of at least one proposed class member is different from that of any defendant; and (3) the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d).

### A.      There Are More Than 100 Putative Class Members

10.      Duchnik purports to represent a class of "all New York residents who purchased the Product during the statutes of limitations for each cause of action alleged only in the State of New York." (Compl. ¶ 57.)

11.      More than 100 persons residing in New York have purchased the Product in New York during the six years[1] preceding the filing of this lawsuit. Accordingly, there are more than 100 putative class members.

### B.      Minimal Diversity Exists Between the Parties

12.      On information and belief, members of the proposed class are citizens of states different from Tops. Therefore, diversity of citizenship exists. 28 U.S.C. § 1332(d)(2)(A).

13.      Duchnik defines the class as "all New York residents who purchased the Product." (Compl. ¶ 57.) Pursuant to 28 U.S.C. § 1332(d)(2)(A), diversity exists when "any member of a class of plaintiffs is a citizen of a State different from any defendant." The putative class includes consumers who are "citizens" of other states but reside in New York, such as consumers who own vacation and/or second homes in New York, or those who work temporarily in New York. This is enough for removal purposes. *See Kosieradzki v. Eversource Serv. Energy Co.*, 2021 WL 1227571, at *7 (D. Conn. Apr. 1, 2021) ("Plaintiffs' proposed class, as defined in the original Complaint, includes according to [Defendant], upon information and belief, individuals and businesses that are citizens of states apart from Connecticut. CAFA minimal diversity jurisdiction may be based on a removing party's 'information and belief.' This comports with the Court's common sense. Not every homeowner in the State of Connecticut is domiciled there, nor is every business operating

---

[1] Duchnik's unjust enrichment and fraud claims have a six-year statute of limitations, and that appears to be the longest statute of limitations for her claims. *See* N.Y. C.P.L.R. § 213. She filed this suit on January 31, 2022, so the class period for these claims extends back to January 31, 2016.

in the State of Connecticut incorporated there or having its principal place of business there. Because of that, the Court finds that minimal diversity was satisfied when [Defendant] removed the case to this Court.").

### C.    The Amount in Controversy Exceeds $5 Million in the Aggregate

14.    Under 28 U.S.C. § 1332(d)(2), an action is removable under CAFA when "the matter in controversy exceeds the sum or value of $5,000,000[.]"  To determine whether the matter in controversy exceeds the sum or value of $5,000,000, "the claims of the individual class members shall be aggregated[.]" *Id.* § 1332(d)(6).

15.    In evaluating removal, the court considers the plaintiffs' allegations, not the likelihood of recovery. *Bigsby v. Barclays Cap. Real Estate, Inc.*, 170 F. Supp. 3d 568, 579 (S.D.N.Y. 2016). The defendant must show only that there is a "reasonable probability" that the CAFA prerequisites are met. *Wurtz v. Rawlings Co.*, LLC, 761 F.3d 232, 239 (2d Cir. 2014). A party opposing jurisdiction must show "to a legal certainty" that the amount recoverable does not meet the jurisdictional threshold. *Insituform Techs., LLC v. Liberty Mut. Ins. Co.*, 2021 WL 307565, *4-5 (W.D.N.Y. Jan. 29, 2021). When a defendant effectuates the removal, "[s]o long as defendant[] provide[s] a plausible explanation, the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *DiPonzio v. Bank of Am. Corp.*, 2011 WL 2693912, at *7 (W.D.N.Y. July 11, 2011) (cleaned up).

16.    Assuming the truth of the allegations in the complaint, there is more than $5 million in controversy, as required for removal by 28 U.S.C. § 1332(d)(2).[2]

17.    Duchnik alleges that she and the putative class have overpaid for the Product and

---

[2] By alleging here that Duchnik might legally recover a judgment exceeding the jurisdictional amount in controversy, Tops neither confesses any liability nor admits the appropriate amount of damages if found liable for any part of Duchnik's claims. Tops is only stating what the stakes of the litigation could be.

that Tops has wrongfully retained her and the putative class members' purchase price. (Compl. ¶¶ 25-28, 54.) Duchnik does not allege the specific amount sought, but these allegations, taken as true for purposes of determining diversity jurisdiction under CAFA, plausibly indicate an amount in controversy exceeding $5 million.

18.     Duchnik says, via an unadorned conclusion, that "[t]he amount in controversy is less than $5 million." (Compl. ¶ 57.) As explained below, this statement is untrue and, given her specific claims, implausible. Moreover, Duchnik cannot bind absent class members to limit the relief available so that she may stay below the amount-in-controversy requirement. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595-96 (2013).

19.     Retail sales of the Product in New York were approximately $274,526 during the past six years. Based on the lowest price alleged of $5.40 (*see* Compl. ¶ 28), there have been approximately 50,838 purchase transactions.

20.     New York GBL § 349 allows statutory damages of up to $50 per transaction, or $2,541,900. *See* N.Y. Gen. Bus. Law § 349(h). Duchnik and the putative class can also seek treble damages (which is based on actual damages) of up to $823,578 under GBL § 349. *Id.* Thus, the putative class could obtain $3,365,478 on its GBL § 349 claim alone. *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 526 (E.D.N.Y. 2017) (noting, in a case involving GBL § 349 and 350 claims, "that statutory damages for many multiple purchasers is potentially enormous: it is $50 or $500 per purchase plus attorneys' fees").

21.     New York GBL § 350 allows statutory damages of up to $500 per transaction, or $25,419,000. *See* N.Y. Gen. Bus. Law § 350-e. Duchnik and the putative class can also seek treble damages (which is based on actual damages) of up to $823,578 under GBL § 350. *Id.* Thus, the putative class could obtain $26,242,578 on GBL § 350 claims alone. *Kurtz*, 321 F.R.D. at 526.

22.     Duchnik also seeks restitution and disgorgement.

23.     Taking into account the sales of the Product during the proposed class period and the possibility of substantial awards for statutory damages, the total amount in controversy easily exceeds $5 million.

## IV.     COMPLIANCE WITH PREREQUISITES FOR REMOVAL

24.     Pursuant to Local Rule 81(a)(3), attached hereto as **Exhibit B** is an index identifying each document filed and/or served in the state court action; and attached as **Exhibit C** is each document filed and/or served in the state court action, individually tabbed and arranged in chronological order.

25.     Pursuant to 28 U.S.C. § 1446(d), promptly upon filing of this Notice of Removal, copies thereof will be sent to Plaintiff's counsel and filed with the Clerk of the Court in the state court action.

26.     Defendant reserves the right to amend or supplement this Notice of Removal, and reserve all rights and defenses, including those available under Federal Rule of Civil Procedure 12.

27.     This Notice of Removal is timely. Tops was served with a summons and copy of the complaint on or about May 6, 2022.

## V.     JURY DEMAND

28.     Duchnik has demanded a trial by jury in this action. Tops also demands a trial by jury in this action on all issues.

WHEREFORE, Defendant Tops Markets, LLC gives notice of the removal of this action from the Supreme Court of the State of New York, County of Niagara, to the United States District Court for the Western District of New York.

Dated:  May 26, 2022

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

*/s/ William E. Vita*
William E. Vita – Bar No. 1963461
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
Tel: (212) 989-8844
wvita@shb.com

*Attorneys for Tops Markets, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2022, the foregoing document was served upon the following via the Court's electronic filing system and/or electronic mail:

Spencer Sheehan
SHEEHAN & ASSOCIATES, P.C.
60 Cuttermill Road, Suite 409
Great Neck, NY 11021-3104
spencer@spencersheehan.com

*Attorney for Plaintiff*

*/s/ William E. Vita*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Nicole Duchnik, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| Tops Markets, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>CORPORATE DISCLOSURE STATEMENT</u>

      Pursuant to Federal Rule of Civil Procedure 7.1(a), Defendant Tops Markets, LLC states that its parent corporations are Tops Markets Holdings Corporation 1 and Tops Markets Holdings Corporation 2. The parent corporation of Tops Markets Holdings Corporation 1 and Tops Markets Holdings Corporation 2 is Tops Markets Intermediate Corporation, whose parent corporation is Tops Markets Corporation. There is no publicly-held corporation owning 10% or more of Tops Markets, LLC's stock.

Dated: May 26, 2022
      New York, New York        Respectfully submitted,

       SHOOK HARDY & BACON L.L.P.

       */s/ William E. Vita*
       William E. Vita – Bar No. 1963461
       1325 Avenue of the Americas, 28th Floor
       New York, NY 10019
       Tel: (212) 989-8844
       wvita@shb.com

       *Attorneys for Tops Markets, LLC*

# EXHIBIT A

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NIAGARA

Nicole Duchnik,

                  Plaintiff,

      - against -                           Complaint

Tops Markets, LLC,

                Defendant           Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Tops Markets, LLC ("defendant") manufactures, markets, labels and sells 100% Arabica Bake Shop Ground Coffee, in cans of 24.2 OZ (686 g), under its Tops brand, which claims to make 210 cups of coffee ("Product").

2.     TOPS private label products are made by third-party manufacturers but sold under the name of the retailer.

3.     In recent years, the quality of private label – sometimes referred to as "generic" or "store brand" – products have increased, such that the quality exceeds that of the major national brands.

4.     TOPS private label products have an industry-wide reputation for quality and value.

5. TOPS promotes these attributes of its private label offerings on its website.

## TOPS Brand Products

Your family always comes first. And, while it can be difficult to create nutritious meals that fit within your schedule and budget, you take pride in what you place on your table.

That's why your friends at TOPS are constantly working to improve our products, so that you can give your family delicious, high-quality foods at an affordable price. We're excited about the changes we've made to TOPS Brand Products, with cleaner, simpler ingredients and great new packaging on more than 2,000 products. We'll continue to work hard every day to provide the taste, quality and value you need for a home made happy.

<center>All smiles with

Tops Brand Products</center>



6.    One of the private label products sold by TOPS is its 100% Arabica Bake Shop Ground Coffee, in cans of 24.2 OZ (686 g).



7.    The Product emphasizes its ability to provide "210 CUPS" of coffee prominently on the front label.

8.    The preparation or brew instructions on the label instructs a purchaser to use one tablespoon for each cup of six ounces of water.

9.    Reasonable consumers, like Plaintiff, viewed this information, and expected that

when these directions were followed, the Product would make 210 cups.

10.     Plaintiff expected that if she decided to use more than 1 tablespoon per 6 fl oz, then she would not be able to make 210 cups.

11.     Reasonable consumers, including Plaintiff, read, and relied on the promise of "210 CUPS" when the directions were followed.

12.     However, the representation that the Product makes "210 CUPS" when the directions were followed is false, deceptive, and misleading.

13.     When consumers, like Plaintiff, followed the Product's directions for use, they could not brew anywhere close to 210 cups.

14.     Plaintiff followed the instructions for use provided on the Product and could not brew anywhere close to 210 cups.

15.     Independent laboratory analysis determined that the Product could only make 153 cups of coffee, when the instructions were followed.

16.     This means the Product provides 57 fewer cups of coffee than promised.

17.     This means that the Product delivers twenty-seven (27) percent fewer cups of coffee than promised on the label, which is what consumers paid for.

18.     No reasonable consumer will expect the number of cups was closer to 150 than 210.

19.     Defendant failed to accurately calculate and verify the number of cups based on the Product's contents and preparation instructions.

20.     Consumers would not know that the Product is unable to make anywhere near the promised number of cups.

21.     This knowledge would require investigation beyond the store aisle, which is outside of what the average consumer can be expected to know or do.

22. Defendant failed to accurately calculate and verify the number of cups based on the Product's contents and preparation instructions.

23. Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of the Product, relative to itself and other comparable products.

24. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of the Product, relative to itself and other comparable products or alternatives.

25. The value of the Product that plaintiff purchased was materially less than their value as represented by defendant.

26. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

27. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for them.

28. The Product is sold for a price premium compared to other similar products, no less than approximately $5.40 for 24.2 oz (686g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

29. Based on the Product's price of $5.49 and its promise to make 210 cups, this means the cost per cup is approximately $0.026.

| Price ($) | Cups | Cost per Cup ($) |
| --- | --- | --- |
| 5.49 | 210 | 0.026142857 |
| 4.00 | 153 | 0.026142857 |

30. However, because the Product only provides 153 cups, the true cost of the Product should be $4.00.

5

Case 1:22-cv-00399-JLS Document 1 Filed 05/26/22 Page 16 of 43

31.     This means that the Product is sold for $1.49 more than if it truthfully were labeled as being able to provide 153 cups.

32.     Other brands of ground coffee which are sold in containers of 24.2 oz (686g) and promise 210 cups provide at least 210 cups and are sold for equivalent or less money than the Product.

33.     Plaintiff overpaid in two ways, because (1) she was sold ground coffee for 210 cups, when it only made 153 cups, and (2) she bought Defendant's Product instead of competitor products, which cost less, and did provide 210 cups of coffee.

### Jurisdiction and Venue

34.     Jurisdiction is proper because defendant is a New York limited liability company with a principal place of business in New York, which does business in this State through numerous grocery stores.

35.     Plaintiff Nicole Duchnik is a citizen of New York.

36.     Defendant Tops Markets, LLC is a New York limited liability company.

37.     Venue is proper because plaintiff resides in this county and a substantial portion of the events giving rise to the claims occurred in this county.

38.     The amount in controversy is less than $5 million.

### Parties

39.     Plaintiff Nicole Duchnik is a citizen of North Tonawanda, Niagara County, New York.

40.     Defendant Tops Markets, LLC, is a New York limited liability company with a principal place of business in Williamsville, New York, Erie County.

41.     Defendant operates close to 150 supermarkets under the Tops Friendly Markets

6

Case 1:22-cv-00399-JLS  Document 1  Filed 05/26/22  Page 17 of 43

brand in New York, Pennsylvania, and Vermont.

42.     Most of the Tops Markets are located in New York.

43.     Having been founded almost one hundred years ago, Tops has always been known for high quality, honesty, and value, helping consumers get necessary grocery store staples at affordable prices.

44.     Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from one or more Tops locations, including the Tops Market located at 301 Meadow Dr, North Tonawanda, NY 14120, among other times, between 2019 and 2021, and/or between July and Aug 2021.

45.     Plaintiff bought the Product at or exceeding the above-referenced price.

46.     Plaintiff relied on the representations on the front label, which she saw, that said, "210 CUPS."

47.     Plaintiff relied on the preparation instructions regarding the use of one tablespoon for six ounces of water.

48.     Plaintiff is conscious of the value she gets for her dollar when shopping at the grocery store.

49.     Plaintiff relied on Defendant's labeling to provide 210 cups of coffee and paid no less than the above-referenced price.

50.     Had she known the Product would provide 57% fewer cups, she would not have bought the Product or would have paid less.

51.     Plaintiff did not expect fifty-seven percent fewer cups of coffee.

52.     Plaintiff did not, nor could be expected to know, that the Product would not provide the number of cups promised on the label.

53.    Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

54.    The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

55.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

56.    Plaintiff is unable to rely not only on Defendant's Product, but other similar coffee products which claim to make a specific number of cups, which causes her to avoid buying those products, even though she would like to.

<u>Class Allegations</u>

57.    The class will consist of all New York residents who purchased the Product during the statutes of limitations for each cause of action alleged only in the State of New York.

58.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

59.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

60.    Plaintiff is an adequate representative because her interests do not conflict with other members.

61.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

62.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

Case 1:22-cv-00399-JLS   Document 1   Filed 05/26/22   Page 19 of 43

63.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

64.     Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

<u>(Consumer Protection Statute)</u>

65.     Plaintiff incorporates by reference all preceding paragraphs.

66.     Plaintiff and class members desired to purchase ground coffee which could make the number of cups promised on the label, 210 cups.

67.     Plaintiffs and class members interpreted the language promising 210 cups reasonably and relied on this in conjunction with the preparation instructions.

68.     Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions, because Plaintiff seeks the best value for her dollars, and bought Defendant's Product because it promised 210 cups, instead of less than this amount.

69.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

70.     Plaintiff relied on the representation of the Product being able to provide 210 cups of coffee.

71.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

72.     The Product was manufactured, labeled, and sold by defendant and expressly and

9

impliedly warranted to plaintiff and class members that it could make the number of cups promised on the label.

73. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

74. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

75. Defendant was in possession of data which proved the Product could not supply 210 cups, yet it failed to accurately modify the 210 cups claim.

76. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product could make the number of cups promised on the label.

77. Defendant's representations affirmed and promised that the Product could make the number of cups promised on the label.

78. Defendant described the Product as one that could make the number of cups promised on the label, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

79. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

80. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted grocer, embedded in local communities throughout upstate New York, known for its high quality private label products, honestly marketed to consumers.

81. Plaintiff and class members have formed special connections to their local Tops

Case 1:22-cv-00399-JLS   Document 1   Filed 05/26/22   Page 21 of 43

Markets, more so than to any of the big box retailers who also sell groceries.

82.  Plaintiff recently became aware of Defendant's breach of the Product's warranties.

83.  Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

84.  Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

85.  Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

86.  The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

87.  The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

88.  The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it could make the number of cups promised on the label, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

89.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

90.  Defendant had a duty to truthfully represent the Product, which it breached.

91.  This duty was non-delegable, and based on Defendant's position, holding itself out

as having special knowledge and experience in this area, trusted grocer, embedded in local communities throughout upstate New York, known for its high quality private label products, honestly marketed to consumers.

92.     Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated its extra-labeling promises and commitments to quality, transparency and putting customers first.

93.     These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

94.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

95.     Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

96.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

97.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they could make the number of cups promised on the label

98.     Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations, based on the data regarding the Product's servings and measurement data it possessed.

<u>Unjust Enrichment</u>

99.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek

12

restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   January 31, 2022

<div style="margin-left:40%">

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

</div>

Case 1:22-cv-00399-JLS   Document 1   Filed 05/26/22   Page 24 of 43

# EXHIBIT B

**NYSCEF - New York State Courts Electronic Filing** (Live System)

<< *Return to* **Search Results**

### E176731/2022 - Niagara County Supreme Court

Short Caption: **Nicole Duchnik v. Tops Markets, LLC**
Case Type: **Torts - Other (Consumer Fraud)**
Case Status: **Pre-RJI**
eFiling Status: **Partial Participation Recorded**

E-mail Participating Parties



**Narrow By Options**

| Document Type: | Please select... | Filed By: |
| | Please select... | |
| Motion Info: | | Filed Date: |
| | | thru | | |
| Document Number: | | |

Display Document List with Motion Folders

Sort By: Doc #

| # | Document | Filed By | Status |
|---|----------|----------|--------|
| 1 | SUMMONS | Sheehan, S. <br> Filed: 01/31/2022 <br> *Received: 01/31/2022* | **Processed** <br> Confirmation Notice |
| 2 | COMPLAINT | Sheehan, S. <br> Filed: 01/31/2022 <br> *Received: 01/31/2022* | **Processed** <br> Confirmation Notice |
| 3 | AFFIRMATION/AFFIDAVIT OF SERVICE | Sheehan, S. <br> Filed: 05/10/2022 <br> *Received: 05/10/2022* | **Processed** <br> Confirmation Notice |

# EXHIBIT C

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NIAGARA

Nicole Duchnik,

                  Plaintiff,

       -against-

Tops Markets, LLC,

                Defendant

**SUMMONS**

Index No.
Purchased on    January 31, 2022

To the above-named Defendant:

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the complaint of the plaintiff herein and to serve a copy of your answer on the plaintiff at the address indicated below within 20 days after the service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

    YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated:   January 31, 2022

                                /s/Spencer Sheehan
                                Sheehan & Associates, P.C.
                                60 Cuttermill Rd Ste 409
                                Great Neck NY 11021-3104
                                Tel: (516) 268-7080
                                Fax: (516) 234-7800
                                spencer@spencersheehan.com

|  | Address |
|---|---|
| Plaintiff | 146 Lindsay Pl North Tonawanda NY 14120-4313 |
| Defendant | 6363 Main St Williamsville NY 14221-5855 |
| | Plaintiff designates Niagara County as the place of trial. |
| Venue | The basis of designation is: [**SELECT ONE**] |

          ☒        Plaintiff's Residence in Niagara County

          ☐        Defendant's Residence in Erie County

          ☐        Other

### SUPREME COURT OF THE STATE OF NEW YORK
### COUNTY OF NIAGARA

Nicole Duchnik,

                Plaintiff,

      - against -                        **Complaint**

Tops Markets, LLC,

                Defendant          **Jury Trial Demanded**

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Tops Markets, LLC ("defendant") manufactures, markets, labels and sells 100% Arabica Bake Shop Ground Coffee, in cans of 24.2 OZ (686 g), under its Tops brand, which claims to make 210 cups of coffee ("Product").

2.    TOPS private label products are made by third-party manufacturers but sold under the name of the retailer.

3.    In recent years, the quality of private label – sometimes referred to as "generic" or "store brand" – products have increased, such that the quality exceeds that of the major national brands.

4.    TOPS private label products have an industry-wide reputation for quality and value.

Case 1:22-cv-00399-JLS   Document 1   Filed 05/26/22   Page 30 of 43

5.     TOPS promotes these attributes of its private label offerings on its website.

## TOPS Brand Products

Your family always comes first. And, while it can be difficult to create nutritious meals that fit within your schedule and budget, you take pride in what you place on your table.

That's why your friends at TOPS are constantly working to improve our products, so that you can give your family delicious, high-quality foods at an affordable price. We're excited about the changes we've made to TOPS Brand Products, with cleaner, simpler ingredients and great new packaging on more than 2,000 products. We'll continue to work hard every day to provide the taste, quality and value you need for a home made happy.

All smiles with

Tops Brand Products



6.      One of the private label products sold by TOPS is its 100% Arabica Bake Shop Ground Coffee, in cans of 24.2 OZ (686 g).



7.      The Product emphasizes its ability to provide "210 CUPS" of coffee prominently on the front label.

8.      The preparation or brew instructions on the label instructs a purchaser to use one tablespoon for each cup of six ounces of water.

9.      Reasonable consumers, like Plaintiff, viewed this information, and expected that

when these directions were followed, the Product would make 210 cups.

10.     Plaintiff expected that if she decided to use more than 1 tablespoon per 6 fl oz, then she would not be able to make 210 cups.

11.     Reasonable consumers, including Plaintiff, read, and relied on the promise of "210 CUPS" when the directions were followed.

12.     However, the representation that the Product makes "210 CUPS" when the directions were followed is false, deceptive, and misleading.

13.     When consumers, like Plaintiff, followed the Product's directions for use, they could not brew anywhere close to 210 cups.

14.     Plaintiff followed the instructions for use provided on the Product and could not brew anywhere close to 210 cups.

15.     Independent laboratory analysis determined that the Product could only make 153 cups of coffee, when the instructions were followed.

16.     This means the Product provides 57 fewer cups of coffee than promised.

17.     This means that the Product delivers twenty-seven (27) percent fewer cups of coffee than promised on the label, which is what consumers paid for.

18.     No reasonable consumer will expect the number of cups was closer to 150 than 210.

19.     Defendant failed to accurately calculate and verify the number of cups based on the Product's contents and preparation instructions.

20.     Consumers would not know that the Product is unable to make anywhere near the promised number of cups.

21.     This knowledge would require investigation beyond the store aisle, which is outside of what the average consumer can be expected to know or do.

4

Case 1:22-cv-00399-JLS   Document 1   Filed 05/26/22   Page 33 of 43

22.     Defendant failed to accurately calculate and verify the number of cups based on the Product's contents and preparation instructions.

23.     Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of the Product, relative to itself and other comparable products.

24.     Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of the Product, relative to itself and other comparable products or alternatives.

25.     The value of the Product that plaintiff purchased was materially less than their value as represented by defendant.

26.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

27.     Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for them.

28.     The Product is sold for a price premium compared to other similar products, no less than approximately $5.40 for 24.2 oz (686g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

29.     Based on the Product's price of $5.49 and its promise to make 210 cups, this means the cost per cup is approximately $0.026.

| Price ($) | Cups | Cost per Cup ($) |
|-----------|------|------------------|
| 5.49 | 210 | 0.026142857 |
| 4.00 | 153 | 0.026142857 |

30.     However, because the Product only provides 153 cups, the true cost of the Product should be $4.00.

5

31. This means that the Product is sold for $1.49 more than if it truthfully were labeled as being able to provide 153 cups.

32. Other brands of ground coffee which are sold in containers of 24.2 oz (686g) and promise 210 cups provide at least 210 cups and are sold for equivalent or less money than the Product.

33. Plaintiff overpaid in two ways, because (1) she was sold ground coffee for 210 cups, when it only made 153 cups, and (2) she bought Defendant's Product instead of competitor products, which cost less, and did provide 210 cups of coffee.

<u>Jurisdiction and Venue</u>

34. Jurisdiction is proper because defendant is a New York limited liability company with a principal place of business in New York, which does business in this State through numerous grocery stores.

35. Plaintiff Nicole Duchnik is a citizen of New York.

36. Defendant Tops Markets, LLC is a New York limited liability company.

37. Venue is proper because plaintiff resides in this county and a substantial portion of the events giving rise to the claims occurred in this county.

38. The amount in controversy is less than $5 million.

<u>Parties</u>

39. Plaintiff Nicole Duchnik is a citizen of North Tonawanda, Niagara County, New York.

40. Defendant Tops Markets, LLC, is a New York limited liability company with a principal place of business in Williamsville, New York, Erie County.

41. Defendant operates close to 150 supermarkets under the Tops Friendly Markets

Case 1:22-cv-00399-JLS  Document 1  Filed 05/26/22  Page 35 of 43

brand in New York, Pennsylvania, and Vermont.

42.     Most of the Tops Markets are located in New York.

43.     Having been founded almost one hundred years ago, Tops has always been known for high quality, honesty, and value, helping consumers get necessary grocery store staples at affordable prices.

44.     Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from one or more Tops locations, including the Tops Market located at 301 Meadow Dr, North Tonawanda, NY 14120, among other times, between 2019 and 2021, and/or between July and Aug 2021.

45.     Plaintiff bought the Product at or exceeding the above-referenced price.

46.     Plaintiff relied on the representations on the front label, which she saw, that said, "210 CUPS."

47.     Plaintiff relied on the preparation instructions regarding the use of one tablespoon for six ounces of water.

48.     Plaintiff is conscious of the value she gets for her dollar when shopping at the grocery store.

49.     Plaintiff relied on Defendant's labeling to provide 210 cups of coffee and paid no less than the above-referenced price.

50.     Had she known the Product would provide 57% fewer cups, she would not have bought the Product or would have paid less.

51.     Plaintiff did not expect fifty-seven percent fewer cups of coffee.

52.     Plaintiff did not, nor could be expected to know, that the Product would not provide the number of cups promised on the label.

Case 1:22-cv-00399-JLS   Document 1   Filed 05/26/22   Page 36 of 43

53.    Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

54.    The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

55.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

56.    Plaintiff is unable to rely not only on Defendant's Product, but other similar coffee products which claim to make a specific number of cups, which causes her to avoid buying those products, even though she would like to.

<u>Class Allegations</u>

57.    The class will consist of all New York residents who purchased the Product during the statutes of limitations for each cause of action alleged only in the State of New York.

58.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

59.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

60.    Plaintiff is an adequate representative because her interests do not conflict with other members.

61.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

62.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

Case 1:22-cv-00399-JLS   Document 1   Filed 05/26/22   Page 37 of 43

63.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

64.     Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

65.     Plaintiff incorporates by reference all preceding paragraphs.

66.     Plaintiff and class members desired to purchase ground coffee which could make the number of cups promised on the label, 210 cups.

67.     Plaintiffs and class members interpreted the language promising 210 cups reasonably and relied on this in conjunction with the preparation instructions.

68.     Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions, because Plaintiff seeks the best value for her dollars, and bought Defendant's Product because it promised 210 cups, instead of less than this amount.

69.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

70.     Plaintiff relied on the representation of the Product being able to provide 210 cups of coffee.

71.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, _et seq_.

72.     The Product was manufactured, labeled, and sold by defendant and expressly and

impliedly warranted to plaintiff and class members that it could make the number of cups promised on the label.

73.     Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

74.     Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

75.     Defendant was in possession of data which proved the Product could not supply 210 cups, yet it failed to accurately modify the 210 cups claim.

76.     Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product could make the number of cups promised on the label.

77.     Defendant's representations affirmed and promised that the Product could make the number of cups promised on the label.

78.     Defendant described the Product as one that could make the number of cups promised on the label, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

79.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

80.     This duty is based on Defendant's outsized role in the market for this type of Product, a  trusted grocer, embedded in local communities throughout upstate New York, known for its high quality private label products, honestly marketed to consumers.

81.     Plaintiff and class members have formed special connections to their local Tops

10

Case 1:22-cv-00399-JLS   Document 1   Filed 05/26/22   Page 39 of 43

Markets, more so than to any of the big box retailers who also sell groceries.

82.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

83.    Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

84.    Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

85.    Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

86.    The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

87.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

88.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it could make the number of cups promised on the label, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

89.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

90.    Defendant had a duty to truthfully represent the Product, which it breached.

91.    This duty was non-delegable, and based on Defendant's position, holding itself out

Case 1:22-cv-00399-JLS   Document 1   Filed 05/26/22   Page 40 of 43

as having special knowledge and experience in this area, trusted grocer, embedded in local communities throughout upstate New York, known for its high quality private label products, honestly marketed to consumers.

92.     Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated its extra-labeling promises and commitments to quality, transparency and putting customers first.

93.     These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

94.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

95.     Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

96.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

97.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they could make the number of cups promised on the label

98.     Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations, based on the data regarding the Product's servings and measurement data it possessed.

Unjust Enrichment

99.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek

restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:  January 31, 2022

                                           Respectfully submitted,

                                           Sheehan & Associates, P.C.
                                           /s/Spencer Sheehan
                                           60 Cuttermill Rd Ste 409
                                         Great Neck NY 11021-3104
                                         Tel: (516) 268-7080
                                         Fax: (516) 234-7800
                                         spencer@spencersheehan.com

14

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK
COUNTY OF NIAGARA                   SUPREME COURT FILED ON: 1/31/2022   INDEX NO.: E176731/2022

NICOLE DUCHNIK                                                                      Plaintiff(s)-Petitioner(s)

-vs-

TOPS MARKETS, LLC

Defendant(s)-Respondent(s)

STATE OF NEW YORK      }
COUNTY OF SARATOGA   } SS.

I, MARK E. MCCLOSKY                being duly sworn, deposes and says that deponent is over the age of
eighteen years and is not a party in this proceeding and resides in the State of New York.

On MAY 6, 2022                at 1:15 P.M.
Deponent served a true copy of **NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT**

bearing index number: E176731/2022            and date of filing: 1/31/2022
upon **TOP MARKETS, LLC**
at address: **CORPORATION SERVICE COMPANY, 80 STATE STREET**
city and state: **ALBANY, NY 12207**

MANNER OF SERVICE}

*Personal*
[ ] By delivering to and leaving with personally}
  known to the deponent to be the same person mentioned and described in the above proceeding as the person to be served.

*Suitable Age Person*
[ ] By delivering and leaving with personally}
  Such person knowing the person to be served and associated with him/her, and after conversing with him/her,
  deponent believes him/her to be a suitable age and discretion.

*Authorized Agent*
[X] By delivering and leaving with} **MAUREEN COGAN, SERVICE OF PROCESS**
  the agent for service on the person in this proceeding designated under Rule 311 CPLR . Service having been made to such
  person at the place, date and time above.

*Affixing to Door, Etc.*
[ ] By affixing a true copy of each to the door of the actual place of business, dwelling place or usual place of abode of the defendant.
  Deponent was unable with due diligence to find the proper or authorized person to be served, or a person of suitable age and
  discretion at the principal dwelling place stated above after having attempted personal delivery on the following dates and times:

*Mailing*
[ ] Deponent completed service by depositing a true copy of each in a postpaid, properly addressed envelope in an official depository
  under the exclusive care and custody of the United States Postal Service. The package was labeled "Personal & Confidential" on
  and mailed to the person stated above at address
          . The envelope did not indicate on the outside that the communication was from an attorney or concerned an action
  against the defendant. The envelope was mailed by__first class mail__certified mail__registered mail__return receipt requested.
  Certified/Registered mail #

*Military Service*
[ ] Deponent asked the person spoken to whether the recipient was presently in military service in the United States or the State of
  New York and was informed that the recipient was not. The person spoke with wore ordinary civilian clothes and no military
  uniform.

DESCRIPTION} Deponent describes the person actually served as:
Sex: FEMALE            Race/Skin Color: WHITE            Hair Color: GRAY
Approximate Age: 56   years  Approximate Height: 5'7"    Approximate Weight: 170     pounds
Other:

Subscribed and sworn before me on} MAY 6, 2022

_____            Attorney Info:
Notary Public, State of New York    Sheehan & Associates, P.C.      _____
Karen E. Rock                       60 Cuttermill Rd Ste 409        MARK E. MCCLOSKY
Qualified in Schenectady County     Great Neck, NY 11021            Deponent
Number 01R06065213                  516-268-7080
Expires: October 9, 2025
     Affidavit # 250981             Firm File # 567460
       NLS # 22-3657