**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**NICOLE DUCHNIK, individually and on**
**behalf of all others similarly situated,**

       **Plaintiff,**

   **v.**                                **22-CV-399 (JLS) (HKS)**

**TOPS MARKETS, LLC,**

       **Defendant.**

---

### <u>REPORT, RECOMMENDATION AND ORDER</u>

      The Honorable John L. Sinatra, Jr., referred this case to the undersigned for all

pretrial matters and to hear and report upon dispositive motions pursuant to 28 U.S.C.

§§ 636(b)(1)(A), (B) and (C). Dkt. 4.

      Plaintiff Nicole Duchnik, on behalf of herself and a putative class of New York

residents who purchased the subject product, filed a complaint alleging that Defendant

TOPS Markets, LLC, markets, labels, and sells 24.2 OZ canisters of 100% Arabica Bake

Shop Ground Coffee (the "Product") which were incapable of producing the "210 CUPS"

advertised on the label, when prepared according to the label's instructions. Dkt. 1-1, at

¶¶ 1, 6, 7, 8, 14.[1] Plaintiff asserts causes of action for deceptive marketing under N.Y.

General Business Law ("GBL") §§ 349 and 350, breach of express warranty, breach of

the implied warranty of merchantability, violation of the Magnuson Moss Warranty Act,

---

[1] Page references and citations to the parties' written submissions are to the pagination
automatically generated by CM/ECF. Citations to Dkt. 1-1 refer to Plaintiff's complaint
(Dkt. 1, at 11–23).

15 U.S.C. § 2301 *et seq.*, negligent misrepresentation, fraud, and unjust enrichment. Plaintiff seeks compensatory, statutory, and punitive damages. Dkt. 1-1, at 37, 39–40.

Defendant moves to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. 3). Plaintiff opposed (Dkt. 7) and Defendant replied (Dkt. 10). For the following reasons, the Court RECOMMENDS that Defendant's motion be GRANTED IN PART and DENIED IN PART.

## **FACTUAL BACKGROUND**

Plaintiff alleges that she purchased the Product "on one or more occasions" from "one or more Tops locations, including the Tops Market located at 301 Meadow Drive, North Tonawanda, NY 14210, among other times, between 2019 and/or between July and Aug 2021." Dkt. 1-1, at ¶ 44. She also alleges that she saw, read, and relied upon the label's representation of "210 CUPS" and expected that it meant the Product contained a sufficient amount of ground coffee to produce 210 cups of coffee when the label's instructions were followed. *Id.* at ¶¶ 9, 11, 46, 49. The instructions on the label instruct a purchaser to use one tablespoon for each cup of six ounces of water. *Id.* at ¶ 8. However, when Plaintiff followed the label's directions, she could not brew "anywhere close" to 210 cups. *Id.* at ¶¶ 8, 13–14. Plaintiff claims that "[i]ndependent laboratory analysis" determined that the Product can only make 153 cups of coffee when following the Product's directions. *Id.* at ¶ 15. She contends that, had she known that the Product would provide 27% fewer cups, she would not have purchased it or would have paid less. *Id.* at ¶¶ 50, 54, 89, 96. Moreover, Plaintiff alleges that she "will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its composition." *Id.* at ¶ 59.

**STANDARD OF REVIEW**

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the court's task is to assess the legal feasibility of the complaint." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). In doing so, the Court "must take the facts alleged in the complaint as true, drawing all reasonable inferences in [the plaintiff's] favor." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (quoting *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).

**DISCUSSION**

I.    **NEW YORK GBL §§ 349, 350**

GBL § 349 prohibits "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service." A "deceptive act[ ]" or practice is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). GBL § 350

prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." The term "false advertising" means "advertising, including labeling . . . if such advertising is misleading in a material respect." GBL § 350-a(1). Both provisions permit "any person who has been injured by reason of any violation" thereof to bring an action to enjoin such unlawful act or practice, an action to recover damages, or both. GBL §§ 349(h), 350-e(3).

To state a claim under GBL § 349 or § 350, a plaintiff must allege that: "(1) the defendant engaged in consumer-oriented conduct[2]; (2) the conduct was misleading in a material way; and (3) plaintiff was injured as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).[3] In determining whether the Product's label is misleading, the court "applies an objective test, viewing the allegedly misleading statement in the context of the product label as a whole." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 581 (S.D.N.Y. 2021). The deceptive act or practice "must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000) (quotation marks and citation omitted). The Court may resolve this question on a motion to dismiss. *See Fink*, 714 F.3d at 741 ("It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer").

---

[2] Defendant does not dispute that Plaintiff has met the first prong. *See* Dkt. 3-1.

[3] The "standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (N.Y. 2002).

The primary evidence "in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself." *Fink*, 714 F.3d at 742. And in "determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Id.* In short, the Court must consider the challenged advertisement "as a whole." *Mantikas v. Kellogg Company*, 910 F.3d 633, 636 (2d Cir. 2018). And while "reliance is not an element of a section 349 [or section 350] claim," a plaintiff "must show that the defendant's 'material deceptive act' caused the injury." *Stutman*, 95 N.Y.2d at 29.

### A.    Plaintiff Plausibly Alleges that a Reasonable Consumer Could Be Misled

Defendant argues that Plaintiff has failed to plead the factual circumstances surrounding her alleged purchase and use of the Product, including her reliance on the representation of "210 CUPS." Dkt. 3-1, at 11. According to Defendant, the "210 CUPS" reference on the label does not state that the Product provides 210 cups "when following the directions for use," but rather "just states '210 cups.'"[4] *Id.* Plaintiff argues

---

[4] Defendant also questions the methodology of Plaintiff's alleged laboratory testing and argues that her failure to allege that she tested the specific container that she purchased is fatal to her claim. Dkt. 3-1, at 12. But "[a]t the pleading stage, [Plaintiff] need not prove the accuracy of the . . . findings or the rigor of its methodology; [s]he need only generally allege facts that, accepted as true, make h[er] alleged injury plausible." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017). Nor is it necessary for Plaintiff to have alleged that she specifically tested the cannister of coffee that she bought. *See Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-CV-1040 (JAM), 2023 WL 2477499, at *3 (D. Conn. Mar. 13, 2023) ("[A] product defect may be plausibly inferred from the fact that a third-party investigation has revealed defects in the same line of such products."). According to Plaintiff, independent laboratory testing showed that the Product could only produce 153 cups when following the label's instructions. Dkt. 1-1, at ¶ 15. Plaintiff alleges that the Product, which she does not dispute contains 24.2 OZ, is uniformly incapable of producing the 210 cups represented on its label. "If all Products are allegedly [unable to produce 210 cups] and Plaintiffs allege that they purchased the Products, 'it is reasonable to conclude that – even

that her allegations that she "relied on the representations on the front label, which she saw, that said '210 CUPS,'" is sufficient to survive a motion to dismiss. Dkt. 7, at 8–9.

Courts that have addressed similar deceptive labeling claims have typically done so in the context of a label advertising "*up to*" a certain number of cups.[5] Courts that "have addressed the 'up to' language routinely find that it does not deceive or confuse consumers." *Brodsky*, 2021 WL 4439304, at *5 ("Here, no reasonable consumer would understand the 'up to' language to be a guarantee. This language is not a promise that the cannister will make that amount, but just that it can under certain circumstances. Put another way, it is clearly a ceiling, not a floor."); *Sorin v. Folger Coffee Co.*, No. 20-80897-CV, 2021 WL 5545292, at *2 (S.D. Fla. Mar. 5, 2021) ("'Up to' a certain number of cups of coffee would lead a reasonable consumer to expect that the actual number of coffee cups produced could be less."); *Devey*, 2022 WL 6827447, at *3 (stating that "up to" statements "are generally *not* construed as concrete promises about a product's maximum yield, particularly in relation to products such as ground coffee"); *see also Fink*, 714 F.3d at 742 (noting that product's description of "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up" could not support plaintiff's consumer protection claims because "the phrase 'up to' would lead a reasonable consumer to expect that speeds could be less than the advertised '3x faster'

---

without measuring – Plaintiffs' [Products] were [unable to produce 210 cups].'" *Ashton v. J.M. Smucker Co.*, No. EDCV20992JGBSHKX, 2020 WL 8575140, at *5 (C.D. Cal. Dec. 16, 2020) (quoting *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025 (N.D. Cal. 2016)). And here, Plaintiff also alleges that she could not brew "anywhere close to 210 CUPS" when following the Product label's instructions. Dkt. 1-1, at ¶ 14.

[5] *See Devey v. Big Lots, Inc.*, No. 21-CV-6688L, 2022 WL 6827447, at *1 (W.D.N.Y. Oct. 12, 2022) ("up to 210" 6-oz. servings of coffee); *Brodsky v. Aldi Inc.*, No. 20 C 7632, 2021 WL 4439304, at *2 (N.D. Ill. Sept. 28, 2021) (up to 210 six-ounce cups of coffee); *Ashton*, 2020 WL 8575140, at *2 ("MAKES UP TO 240 6 FLZ OZ.").

and '100x faster' speeds") (quotation marks and citation omitted). On the other hand, "[m]ultiple courts . . . have concluded that if a seller represents that a good produces 'up to' a certain quantity of something, and there is a significant disparity between that quantity and the amount a consumer can actually produce, 'a fact question is presented as to whether a reasonable consumer would be deceived.'" *In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, at *8 (W.D. Mo. Dec. 28, 2021) (quoting *Rawa v. Monsanto Company*, 2017 WL 3392090, at *4 (E.D. Mo. Aug. 7, 2017) (a label indicating that weedkiller concentrate "Makes Up to 23 Gallons" was arguably a misrepresentation where, using the mixing directions, most bottles of concentrate made significantly less)).

Here, as Plaintiff notes, the label at issue states "210 CUPS," with no qualifier. *See* Dkt. 1-1, at ¶ 6. Moreover, unlike many cases where courts have concluded as a matter of law that a reasonable consumer would not be misled, the Product's label here does not contain alternate brewing instructions or qualifications regarding desired strength. *Cf. Brodsky*, 2021 WL 4439304, at *5 ("The labels clearly describe various factors that may affect yield, including the number of servings made at one time (which would require less ground coffee than making a single serving at a time), and the desired strength of each serving."); *Chung v. Igloo Prod. Corp.*, No. 20-CV-4926 (MKB), 2022 WL 2657350, at *8 (E.D.N.Y. July 8, 2022) ("The Court finds that the 'up to' phrase, together with the *conspicuous language clarifying the conditions under which the ice retention claim would be valid*, notifies a reasonable consumer that it will only achieve the advertised 120-hour retention claim under specific conditions.") (emphasis added). For example, in *Devey*, the plaintiff alleged that the defendant's coffee, when

brewed in a manner consistent with the single-serving directions on the label, was not capable of producing approximately "210 suggested strength 6 fl. oz. servings of coffee." *Devey*, 2022 WL 6827447, at *2. However, "by focusing solely on the instructions for brewing a *single* serving, plaintiff's calculation completely overlook[ed] the brewing instructions on the label for larger batches, which offer a significantly higher potential yield." *Id.* at *3.

Defendant does not contend that the Product's label provides alternate brewing instructions or qualifying language regarding desired strength—rather, the label "instructs a purchaser to use one tablespoon for each cup of six ounces of water."[6] Dkt. 1-1, at ¶ 8. Thus, Plaintiff plausibly alleges that the Product can *never* produce "anywhere close" to the "210 CUPS" displayed on its label when following *any* instructions provided on the label. *See Agee v. Kroger Co.*, No. 22 C 4744, 2023 WL 3004628, at *3 (N.D. Ill. Apr. 19, 2023) (plaintiff plausibly alleged that a reasonable

---

[6] Even where the labels at issue have contained qualifying language regarding desired strength or alternate instructions that could produce more, some courts have found that a reasonable consumer could be misled. *See Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 910 (C.D. Cal. 2021) ("Even with the 'qualifying language' about a consumer's preference for his or her 'desired strength' of coffee, . . . the Court cannot say as a matter of law that a reasonable consumer would expect the yield to be cut in half when brewing coffee as instructed."); *Arthur v. United Indus. Corp.*, No. 217CV06983CASSKX, 2018 WL 1472500, at *7 (C.D. Cal. Mar. 23, 2018) (concluding that a reasonable consumer could be misled where "each Concentrate bottle include[d] an explanation on the rear label that there are three different 'amount to use' options, and plaintiff "acknowledge[d] that the Concentrate front label's 'makes up to' language [was] accurate with respect to the most diluted mixing option" but the labels "fail[ed] to explicitly state *which* option produces the 'makes up to' advertisement on the front label of the Concentrate bottle"); *Rawa*, 2017 WL 3392090, at *4 (concluding that a reasonable consumer could be misled by weedkiller concentrate's label stating "Makes Up To 23 Gallons" where mixing instructions on the front of the booklet label, "if followed, would result in much less than 23 gallons of weed killer" and neither "the front of the booklet label [nor any part of the front label "direct[ed] a consumer to check the inside of the booklet label for other mixing options").

consumer could be misled where the label at issue "included no identification of any factors that might limit the amount of time that the patch would remain adhered to the body and deliver relief"). A reasonable consumer "who viewed the representation that a coffee canister produces 'about' a certain number of cups of coffee could expect that—if prepared according to the standard instructions—the Products would do just that." *Lorentzen*, 532 F. Supp. 3d at 910. While "it is certainly possible that consumers would understand that the Products could make . . . the stated servings by using less ground coffee than recommended per cup, it is also possible that consumers would expect to be able to make the represented servings following the recommended brewing instructions." *Ashton*, 2020 WL 8575140, at *10. And while the Product's label accurately states the Product's net weight, that alone is insufficient to demonstrate that a reasonable consumer could not be deceived as a matter of law. *Id.* (rejecting argument that the defendant was "protected against a claim of deception by disclosing the weight of the coffee on the front label" because the court could not "say as a matter of law that a reasonable consumer would understand that the statement about the number of approximate servings obtained from instructed use should be discounted by the weight of the product"). The Court therefore cannot conclude as a matter of law that a reasonable consumer would not be deceived by the Product's label. *See In re Folgers Coffee*, 2021 WL 7004991, at *8 (concluding that a reasonable consumer could be misled by the product's labels where, according to plaintiff's allegations, "it [was] *impossible* to *ever* brew anywhere near the number of servings on the Labels while simultaneously following the Instructions"); *Womick v. Kroger Co.*, No. 21-CV-00574-NJR, 2022 WL 673095, at *4 (S.D. Ill. Mar. 7, 2022) (holding that plaintiff satisfied the

reasonable consumer standard by alleging that "the products represent[ed] that they could make 225 or 235 cups of coffee, and it was impossible for [plaintiff] to make 225 or 235 cups following Defendant's own instructions on the can"); *cf. Devey*, 2022 WL 6827447, at *2 ("[A] consumer following a brewing method listed on the Product's label could brew more than 90% of the maximum 'up to 120 suggested strength 6 fl. oz. servings' described on the Product."); *Brodsky*, 2021 WL 4439304, at *5 ("Plaintiffs fail to allege that the cannister cannot yield 210 cups of coffee under any circumstances.").

**B.    Actual Injury**

Defendant argues that Plaintiff failed to sufficiently allege "actual injury." Dkt. 3-2, at 12–14. An "actual injury claim under Section 349 typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (quoting *Orlander*, 802 F.3d at 302). This may come "in the form of an overpayment or 'price premium,' whereby a plaintiff pays more than she would have but for the deceptive practice." *Id.* Deception alone "cannot constitute 'actual injury' under GBL § 349, as to hold otherwise would render that element of the statute wholly superfluous." *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 59 (S.D.N.Y. 2019). In the consumer goods context, "an allegation of a defendant's deception alone does not suffice to plead injury, because a plaintiff may have received the benefit of the bargain despite the alleged misrepresentation." *Colpitts*, 527 F. Supp. 3d at 576. Instead, a plaintiff "must plead something more than the defendant's deception; for example, that the price of the product was inflated as a result of defendant's deception or that use of the product

adversely affected plaintiff's health." *Id.* (quotation marks and citation omitted).

Duchnik alleges that "[o]ther brands of ground coffee which are sold in containers of 24.2 OZ (686 g) and promise 210 cups provide at least 210 cups and are sold for equivalent or less money than the Product." Dkt. 1-1, at ¶ 32. Defendant argues that Duchnik's failure to identify any of the alleged "competitor products," nor what those products cost, is fatal to her claims.[7] Dkt. 3-1, at 13–14. But requiring Plaintiff to "identify a precisely comparable product in order to allege a GBL section 349 or 350 claim under a price premium theory . . . contradicts the weight of the law in this Circuit." *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 69 (E.D.N.Y. 2017). Courts "routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss." *Id.* (collecting cases). Thus, Plaintiff's "failure to identify the prices of competing products to establish the premium that she paid 'is not fatal to [her] claim' at this stage of the proceedings." *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (summary order) (quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 481–82 (S.D.N.Y. 2014) (collecting cases)).

Accordingly, "[n]umerous courts in this Circuit have 'found sufficient a plaintiff's general allegation that she would not have paid a price premium but for the defendant's misrepresentations.'" *Colpitts*, 527 F. Supp. 3d at 578 (quoting *Rodriguez v. Hanesbrands Inc.*, No. 17 Civ. 1612 (DLI) (RLM), 2018 WL 2078116, at *5 (E.D.N.Y.

---

[7] Defendant cites *McVetty v. TomTom N. Am.,* Inc, in support of its argument. But there, Plaintiff "failed to allege which Product he or any other class member purchased, how much was paid, or what a comparable alternative would have cost, and accordingly ha[d] not adequately alleged that he or any class member paid a premium." No. 19 CV 4908 (NSR), 2021 WL 965239, at *4 (S.D.N.Y. Mar. 13, 2021).

Feb. 20, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018)). Although "plaintiffs sometimes point to comparators in support of a price premium claim, . . . a plaintiff is not required to do so in order to allege injury." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 352 (S.D.N.Y. 2020) (internal citation omitted); *accord Goldemberg*, 8 F. Supp. 3d at 482 ("While identifying the prices of competing products in the Complaint would strengthen Plaintiff's allegation of injury, . . . the failure to do so is not fatal to Plaintiff's claim."). Therefore, allegations that a plaintiff "would not have bought the product or paid less for it had she known the truth behind the misrepresentation satisfies an actual injury claim at the motion to dismiss stage." *Brown v. Kerry Inc.*, No. 20CV9730PGGJLC, 2021 WL 5446007, at *3 (S.D.N.Y. Nov. 22, 2021), *report and recommendation adopted,* No. 20CIV9730PGGJLC, 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022). Similarly, a plaintiff "properly plead[s] the injury requirement by alleging that 'the price of the product was inflated as a result of defendant's deception.'" *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023) (quoting *Baron v. Pfizer*, 42 A.D.3d 627, 629 (3d Dep't 2007)); *see also Axon*, 813 F. App'x at 704 (same).

Duchnik alleges that the Product is "sold for a price premium compared to other similar products, . . . a higher price than it would otherwise be sold for, absent the misleading representations and omissions." Dkt. 1-1, at ¶ 28.  She further alleges that "[t]he value of the Product that [she] purchased was materially less than their value as represented by defendant[,]" "Defendant sold more of the Product and at a higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers[,]" and "[h]ad she known the Product would provide 57% fewer

cups, she would not have bought the Product or would have paid less." Dkt. 1-1, at ¶¶ 25–26, 28, 50. Plaintiff's allegations that Defendant's misrepresentations allowed it to charge a higher price for the Product, combined with her allegation that she would not have bought the Product at the same price absent Defendant's alleged deception, are thus sufficient at this stage to meet the injury requirement under GBL § 349 and § 350. *See MacNaughton*, 67 F.4th at 99 (plaintiff "properly pleaded the injury requirement by alleging that 'the price of the product was inflated as a result of defendant's deception'") (citation omitted); *Axon*, 813 F. App'x 701, 704 (2d Cir. 2020) (summary order) (same); *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711 (LJL), 2020 WL 6564755, at *11 (S.D.N.Y. Nov. 9, 2020) (allegations that the plaintiffs would not have purchased the product, or would not have purchased it on the same terms had they known the truth, were sufficient to survive dismissal); *Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474 (BKS) (TWD), 2016 WL 406295, at *10 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff stated a claim under GBL § 349 where he alleged that, had he "known the truth," he "would not have bought the vodka, or would have paid less for it"); *Koenig v. Boulder Brands, Inc.,* 995 F. Supp. 2d 274, 288–89 (S.D.N.Y. 2014) (finding a sufficiently-pled § 349 injury where the plaintiff alleged that he would not have paid the price charged for fat-free milk had he known it contained fat).

    **C.**    <u>**Causation**</u>

    To properly allege causation, "a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession

of the products he purchased."[8] *Goldemberg*, 8 F. Supp. 3d at 480; *see Gale v. Int'l Bus. Machines Corp.*, 9 A.D.3d 446, 447 (2d Dep't 2004) ("If the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury."); *Devey*, 2022 WL 6827447, at *4 ("To establish the requisite causal connection between an alleged written misrepresentation and the resulting injury, plaintiff must plausibly allege that she actually viewed the misleading statement prior to making her decision to purchase . . . ."); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020) ("In order to plead a § 349 or § 350 claim successfully, Plaintiffs must allege that they saw the misleading statements of which they complain before they purchased or came into possession of Defendant's [product].").

Here, Plaintiff alleges that she purchased the Product "on one or more occasions" from "one or more Tops locations, including the Tops Market located at 301

---

[8] Some courts in this circuit have held that a plaintiff need not plead exposure to the alleged misrepresentation prior to their purchase if the plaintiff has alleged that the price of the product was inflated for all customers due to the misrepresentation. *See Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 100 (S.D.N.Y. 2022) ("[A] plaintiff can also plead both injury and causation under GBL §§ 349 and 350, by alleging that the defendant's misleading or deceptive advertising campaign caused a price premium, that the price premium was charged both to those who saw and relied upon the false representations and those who did not, and that, as a result of the price premium, plaintiff was charged a price she would not otherwise have been charged but for the false campaign."). In *MacNaughton*, the Second Circuit held that the plaintiffs had satisfied the injury requirement by alleging that "the price of the product was inflated as a result of defendant's deception." 67 F.4th at 99 (quotation marks omitted). Yet, the court still independently assessed the causation requirement, holding that the plaintiff's "properly alleged causation because her First Amended Complaint claims that she saw the 'therapeutic-grade' label and the statements made about the individual Products' promised effects before purchasing the Products." *Id.* at 98 (citing *Goldemberg*, 8 F. Supp. 3d at 480).

Meadow Drive, North Tonawanda, NY 14210, among other times, between 2019 and/or between July and Aug 2021." Dkt. 1-1, at ¶ 44. Plaintiff "relied on the representations on the front label, which she saw, that said, '210 CUPS.'" *Id.* at ¶ 46. And "[h]ad she known the Product would provide 57% fewer cups, she would not have bought the Product or would have paid less." *Id.* at ¶ 50. A court in this district recently found nearly identical allegations insufficient to establish the requisite casual connection. *See Devey*, 2022 WL 6827447, at *5.

> While plaintiff vaguely claims that she purchased the Product at least once at a store in Rochester, New York, and potentially on "more occasions . . . from [d]efendant's [other] stores" within the relevant statute of limitations and also at "other times," and separately avers that she "read" the label's representations and relied upon them, plaintiff does not specify the dates or sequence of any of those events, nor does she otherwise allege that she saw the Product labeling prior to, or in connection with, any particular purchase, at any particular time or place. . . . Because plaintiff's disjointed allegations of label reading and Product purchases at various times and places do not plausibly give rise to the inference that she actually saw and read the Product's label prior to making a specific purchase decision, let alone that such exposure or purchase was one of those alleged to have taken place in in New York, within the applicable three-year statute of limitations, her complaint fails to state a claim under N.Y. GBL §§ 349 and 350.

*Id.*

Duchnik's allegations that she viewed the label's representation of "210 CUPS" and relied on that representation are at least sufficient for the Court to infer a causal connection. The "reasonable inference to be drawn from these allegations" is that Duchnik "saw the [label's representation of '210 CUPS'] described previously in the Complaint, and was thus deceived into purchasing the product[] in question." *Goldemberg*, 8 F. Supp. 3d at 480; *see Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014) ("Plaintiff describes in detail the allegedly

misleading and deceptive statements contained on the [Product]'s packaging upon which he relied in purchasing the product. The reasonable inference to be drawn from such allegations is that Plaintiff saw the misleading statements and, as a result of such, purchased the [Product] at issue."); *cf. Zachmann v. Coleman Co. Inc.*, No. 20 CV 9146 (VB), 2022 WL 161480, at *4 (S.D.N.Y. Jan. 18, 2022) ("Although the Court could infer causation from plaintiffs' allegations of reliance, these allegations are conclusory and thus cannot be credited[]" because "plaintiffs d[id] not allege the coolers they actually purchased had misleading labels, or that they were misled by those labels in particular."). Even if Duchnik's allegations that she saw, read, and relied upon the label's representation are insufficient to establish that she viewed the label's representation *before* purchasing the Product, her allegation that she "bought Defendant's Product *because it promised 210 cups*, instead of less this amount" does establish causality. Dkt. 1-1, at ¶ 68 (emphasis added). Therefore, the Court concludes that Duchnik has sufficiently alleged that Defendant's alleged deceptive representation caused her injury. Accordingly, the Court recommends that Defendant's motion to dismiss Plaintiff's GBL §§ 349 and 350 claims be denied.

## II.    BREACH OF EXPRESS WARRANTY

To assert a breach of warranty claim under New York law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" N.Y. U.C.C. § 2–607(3)(a). Although "[t]he sufficiency and timeliness of the notice is generally a question for the jury," courts "have found some delays unreasonable as a matter of law." *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (citations omitted). "To satisfy the pre-suit notice requirement[,] 'the notice given by plaintiff had only to 'alert

16

[defendant] that the transaction [was] troublesome and [did] not need to include a claim for damages or threat of future litigation.'" *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 282 (E.D.N.Y. 2021) (quoting *Cliffstar Corp. v. Elmar Industries, Inc.*, 254 A.D.2d 723, 724 (4th Dep't 1998)). But "to adequately plead the pre-suit notice requirement, 'plaintiff must provide factual allegations—such as the date and method plaintiff sent a pre-suit notice—supporting the contention that [she] notified [the] defendant of the alleged breach within a reasonable time.'" *Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *14 (S.D.N.Y. Mar. 18, 2022) (quoting *Grossman*, 516 F. Supp. 3d at 283).

Defendant argues that Plaintiff's express and implied warranty claims should be dismissed because Plaintiff failed provide pre-suit notice. Dkt 3-1, at 14–17. According to the complaint,

> Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.
>
> Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.
>
> Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

Dkt. 1-1, at ¶ 83–85.

These allegations are insufficient to meet the pre-suit notice requirement. *See Gordon*, 2022 WL 836773, at *14 (finding allegations that "Plaintiff provided or will provide notice to [D]efendant, its agents, representatives, retailers and their employees" and "Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices since the Product has been sold" insufficient to avoid dismissal); *Colpitts*, 527 F. Supp. 3d at 590

(finding allegation that "[the] [d]efendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years" to be "too conclusory and . . . unsupported by any specific factual allegations" to satisfy the notice requirement for suit); *Grossman*, 516 F. Supp. 3d at 283 (plaintiff's allegation that "within a reasonable time after they knew or should have known of [the] [d]efendants' breach, [the] [p]laintiff, on behalf of herself and [c]lass [m]embers, placed [the] [d]efendants on notice of their breach, giving [the] [d]efendants an opportunity to cure their breach, which they refused to do" was "insufficient to plead pre-suit notice"); *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *2 (S.D.N.Y. Mar. 30, 2018) (explaining that "[p]roper factual allegations should, at least, include the date and method by which [the] [p]laintiff afforded [pre-suit] notice to [the] [d]efendant," and dismissing claim for breach of express warranty where the plaintiff "failed to allege any facts supporting the allegation that she notified [the] [d]efendant of the alleged breach within a reasonable time after its discovery").

Plaintiff argues that she provided notice within a reasonable time through filing this action in January 2022, and, alternatively, that the notice requirements in New York for breaches of warranty do not apply to retail sales. Dkt. 7, at 12. But "Plaintiff's arguments that pre-suit notice is not required or, in the alternative, that Plaintiff's pleadings constitute notice, are unavailing." *Gordon*, 2022 WL 836773, at *14. "Although 'a minority of New York State cases suggest an exception to the notice requirement in retail sales . . . the exception appears to be exclusively applied when a party alleges physical, in addition to economic, injury." *Howze v. Mondelez Glob. LLC*, No. 22-CV-351 (JLS), 2023 WL 122307, at *5 (W.D.N.Y. Jan. 5, 2023) (quoting *Colella v. Atkins*

*Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018)); *see Richards v. Johnson & Johnson, Inc.*, No. 517-CV-00178, 2018 WL 6573332, at *4 (N.D.N.Y. Dec. 13, 2018) (noting that the exception applies only to actions where personal injury is pleaded and that a similar "distinct treatment of warranty claims in personal injury cases is found in other jurisdictions"); *Tomasino*, 2015 WL 4715017, at *4 (rejecting the plaintiff's contention that the retail sale exception applies, because "every case . . . in which courts implementing New York law declined to apply the notice requirement . . . amounted to a tort claim in which the plaintiff suffered some personal injury"); *Colpitts*, 527 F. Supp. 3d at 589 (explaining that "[b]ecause [the] [p]laintiff only alleges economic injury in the form of a price premium paid for the [p]roduct, this exception—to the extent it exists at all—is inapplicable," and dismissing breach of express warranty claim for failure to allege pre-suit notice). Therefore, because "Plaintiff only alleges economic injury in the form of a price premium paid for" the Product, "this potential exception is inapplicable in this case." *Howze*, 2023 WL 122307, at *5.

Nor can Plaintiff rely on her allegation that she "satisfied the notice requirement by filing this lawsuit." *Id.* The "clear majority of courts in this [Circuit] have rejected arguments that . . . a plaintiff [may] satisfy the notice requirements by filing a complaint." *Wheeler v. Topps Co., Inc.*, No. 22 CIV. 2264 (LGS), 2023 WL 405015, at *4 (S.D.N.Y. Jan. 25, 2023) (collecting cases); *see also Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 282 (S.D.N.Y. 2021) ("Courts addressing this issue have held that timely, *pre-litigation* notice is a condition precedent to bringing an action for breach of warranty.") (quotation marks and citation omitted) (emphasis added). Plaintiff's initiation of this action "does not establish that she provided 'notice *before* filing this lawsuit'—as New

York law requires." *Howze*, 2023 WL 122307, at *5 (quoting *Brown*, 2021 WL 5446007, at *8 (emphasis added)); *see Lugones*, 440 F. Supp. 3d at 245 (holding that plaintiff must allege some form of timely, *pre-litigation* notice) (emphasis added). Therefore, the Court recommends that Plaintiff's breach of express warranty claim be dismissed.

## III. BREACH OF IMPLIED WARRANTY

The U.C.C.'s notice requirement "also applies to claims for breach of implied warranty." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 392 (S.D.N.Y. 2021). Thus, Plaintiff's "breach of implied warranty claim fails for the same reason as her express warranty: she fails to allege compliance with New York's notice requirement." *Devey*, 2022 WL 6827447, at *6. Accordingly, the Court recommends that Plaintiff's claim for breach of implied warranty be dismissed for failure to provide pre-suit notice.[9]

---

[9] Defendant also argues that Plaintiff fails to state a claim because she does not allege that the Product is unfit for consumption. Dkt. 3-1, at 17. The Court agrees. Plaintiff contends that whether the product is "unfit for consumption" is "only one factor in evaluating an implied warranty claim." Dkt. 7, at 13. But where "the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality." *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 JG RML, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015); *see Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020) ("A seller of food products, including a retailer, is bound by the implied warranty that foods sold are fit for human consumption and therefore merchantable."); *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 686 (S.D.N.Y. 2021) ("[I]n order to breach the implied warranty of merchantability, the Product would have to have been unfit to drink."). Even "when misleading food packaging has been alleged, courts dismiss implied warranty of merchantability claims for failure to allege that the product was unfit for human consumption." *Brown*, 2021 WL 5446007, at *9. Here, Plaintiff's failure to allege the Product is unfit for human consumption is thus fatal to her breach of implied warranty claim. *See, e.g., Budhani*, 527 F. Supp. 3d at 686 ("Because Plaintiff does not suggest that the Product is not fit for human consumption, he fails to state a claim for breach of the implied warranty of merchantability under New York law."); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) ("[B]ecause Plaintiffs do not suggest that the [powdered tea mix] products are not fit for human consumption, they fail to state a claim for breach of the implied warranty of merchantability under New York

## IV.    MMWA CLAIM

The Magnuson Moss Warranty Act ("MMWA") grants relief to a consumer "who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty." *Wilbur v. Toyota Motor Sales*, *U.S.A.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2301(d)(1)) (internal quotations omitted). A written warranty is defined as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6)(A).

Although the MMWA is a federal statute, "liability is premised on violations of state warranty laws." *Devey*, 2022 WL 6827447, at *6; *see also Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) ("[T]he MMWA merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages.") (quotation marks and citation omitted). Thus, to state a claim under the MMWA, "plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015); *see Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 86 (S.D.N.Y. 2020) ("To assert a breach of warranty claim under New York law — and, by

---

law."); *Devey*, 2022 WL 6827447, at *6 (dismissing breach of implied warranty claim for coffee product where plaintiff failed to "plausibly allege that the Product was unfit for human consumption"); *Howze*, 2023 WL 122307, at *5 (dismissing breach of implied warranty claim because plaintiff failed to allege that the defendant's cookies were "unfit to eat"); *Gordon*, 2022 WL 836773, at *15 (dismissing claim where plaintiff "did not allege that the Product was unfit for human consumption").

extension, under the MMWA — the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.") (quotation marks and citation omitted). As discussed above, the Court concludes that Plaintiff failed to state a claim for breach of express or implied warranty under New York law. Accordingly, Plaintiff also fails to state a claim under the MMWA and the Court recommends that Plaintiff's MMWA claim be dismissed.[10] *See Howze*, 2023 WL 122307, at *5 n.4 (dismissing MMWA claim "because Plaintiff ha[d] not adequately pleaded a cause of action for breach of warranty"); *Valcarcel*, 577 F. Supp. 3d at 283 (dismissing MMWA claim because Plaintiff failed to provide pre-suit notice, and therefore had no viable state-law breach of warranty claims); *Anderson v. Unilever United States, Inc.*, 607 F. Supp. 3d 441, 460 (S.D.N.Y. 2022) ("Because the Court has already found Plaintiff's claims for breach of express and implied warranty to be subject to dismissal, Plaintiff's claim under the MMWA is similarly dismissed.").

## V.    NEGLIGENT MISPRESENTATION[11]

Defendant primarily argues that Plaintiff has failed to allege any special relationship between herself and Defendant and that basic commercial transactions do not give rise to the requisite special relationship. Dkt. 3-1, at 19–21. According to Plaintiff, her transaction with Defendant was not a "basic commercial transaction"

---

[10] Defendant also argues that the representation of "210 CUPS" does not qualify as a written warranty under the MMWA, Plaintiff's claim is preempted by federal labeling requirements, and that Plaintiff's claim is procedurally defective because the Class Action Fairness Act ("CAFA") "does not override the MMWA's numerosity requirement of at least 100 *named* plaintiffs." Dkt. 3-1, at 18–19.

[11] Negligent misrepresentation claims are subject to the heightened pleading standard under Rule 9(b). *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005) (stating negligent misrepresentation claims under New York law "must be pled in accordance with the specificity criteria of Rule 9(b)").

because Defendant promised that "[her] family always comes first." Dkt. 7, at 15.

Moreover, Plaintiff contends that "by its extra-label promotion of 'Tops Brand Products'

as uniquely capable to deliver 'high-quality foods at an affordable price,' Defendant

highlighted its 'special knowledge and experience [in] this area.'" *Id.*

      To state a claim for negligent misrepresentation under New York law, a plaintiff

must show that "(1) the defendant had a duty, as a result of a special relationship, to

give correct information; (2) the defendant made a false representation that he or she

should have known was incorrect; (3) the information supplied in the representation was

known by the defendant to be desired by the plaintiff for a serious purpose; (4) the

plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his

or her detriment." *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

But "where the statement at issue is directed at a 'faceless of unresolved class or

persons,' no duty of care arises." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404

F.3d 566, 584 (2d Cir. 2005). To determine the existence of a special relationship, New

York courts look to three factors: "whether the person making the representation held or

appeared to hold unique or special expertise; whether a special relationship of trust or

confidence existed between the parties; and whether the speaker was aware of the use

to which the information would be put and supplied it for that purpose." *Suez Equity*

*Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (quoting *Kimmell*

*v. Schaefer*, 89 N.Y.2d 257 (N.Y. 1996)).

      Courts have "routinely held that an arms-length commercial transaction, without

more, does not give rise to a special duty to speak with care." *Henneberry v. Sumitomo*

*Corp. of America,* 532 F. Supp. 2d 523, 539 (S.D.N.Y. 2007). The relationship between

the parties "must instead 'suggest a closer degree of trust and reliance than that of the ordinary buyer and seller.'" *Izquierdo*, 2016 WL 6459832, at \*8 (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, No. 00-cv-1657, 2002 WL 31453789, at \*3 (S.D.N.Y. Oct. 31, 2002)). Thus, "[c]ourts addressing negligent misrepresentation claims in connection to allegedly deceptive product labels have routinely held that no special relationship exists between a supermarket and an ordinary consumer." *Valcarcel*, 577 F. Supp. 3d at 281 (collecting cases).

Here, Plaintiff's allegations describe a relationship between Plaintiff and Defendant which is that of an ordinary buyer and seller. While Plaintiff alleges that Defendant owes a duty "based on [its] position, holding itself out as having special knowledge and experience in this area" and its status as a "trusted grocer" that is "known for its high quality private label products, honestly marketed to consumers," Dkt. 1-1, at ¶ 91, her "bare and conclusory assertion that [Defendant] has special expertise in an area of production or sale of a product is not sufficient to plead a special relationship." *Miramontes v. Ralph Lauren Corp.*, No. 22-CV-04192 (CM), 2023 WL 3293424, at \*13 (S.D.N.Y. May 5, 2023); *see, e.g., Santiful v. Wegmans Food Markets, Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at \*5 (S.D.N.Y. Jan. 28, 2022) (finding no special relationship where plaintiff alleged that a duty existed "based on defendant's position as an entity, which has held itself out as having special knowledge and expertise in the production, service, and/or sale of the product type" because "case law is clear that the transactions alleged are insufficient to establish a special relationship for the purposes of a negligent representation"); *Brown*, 2021 WL 5446007, at \*7 ("Although [Plaintiff] argues that [Defendant] had 'special knowledge and experience' in

24

the production and sale of the Product, . . . nothing in the Complaint suggests that the parties were engaged in anything more than basic commercial transactions in 2019 and 2020."); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166–67 (S.D.N.Y. 2021) (finding no special relationship where plaintiff merely alleged, in a conclusory manner, that Defendant "held itself out as having special knowledge and expertise in product, service and/or sale of the product type").

Nor do Plaintiff's allegations that "TOPS private labels have an industry-wide reputation for quality and value[,]" and that "TOPS promotes these attributes of its private label offerings on its website" change this analysis. Dkt. 1-1, at ¶¶ 4, 5. Plaintiff "do[es] not cite any cases in support of the proposition that a special relationship may be based on an advertisement directed at consumers and intended to induce reliance[,] and courts have consistently held that advertisements alone are not sufficient." *Stolz*, 2015 WL 5579872, at *25 (collecting cases); *see also Chung v. Igloo Prod. Corp.*, No. 20-CV-4926 (MKB), 2022 WL 2657350, at *16 (E.D.N.Y. July 8, 2022) (same) (collecting cases); *Eidelman v. Sun Prod. Corp.*, No. 16-CV-3914 (NSR), 2017 WL 4277187, at *5 (S.D.N.Y. Sept. 25, 2017) (representations made by Defendants on their website and Label—"that their products were 'clinically proven' to be gentle on skin, and were '#1' recommended by dermatologists and allergists" were insufficient to "overcome the presumption that advertisements are generally insufficient to establish such a relationship").

Similarly, Plaintiff "cite[s] no support for the notion that a supermarket's generally favorable reputation can render a sale something 'more than an arms-length commercial transaction.'" *Valcarcel*, 577 F. Supp. 3d at 281–82 (quoting *Stoltz v. Fage*

*Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL 5579872, at *24

(E.D.N.Y. Sept. 22, 2015)); *see Devey*, 2022 WL 6827447, at *7 ("[P]laintiff's self-

serving and conclusory claims that [Defendant] enjoys a 'best-in-class' reputation for

'customer service and integrity,' with an attendant duty to accurately represent its

products, could be applied to millions of manufacturers and retailers: they do not

plausibly describe a relationship of unique 'trust and confidence' beyond that of a typical

manufacturer and purchaser, or otherwise suggest that any special relationship

existed."). Therefore, the "non-specific assertion of a 'quality' and 'trust' guarantee

cannot not plausibly be interpreted as a representation of expertise in this context[.]" *Id.*

at 282 (allegations that Defendant was a "supermarket with an established reputation

for quality, as promised through the front label seal, referring to the seal on the front of

the product's packaging 'promising a 100% Quality & Trust Guarantee'" were insufficient

to create a special relationship) (quotation marks omitted). The "status of a retailer as a

'trusted brand . . . does not give rise to a duty to impart correct information, as the

plaintiffs comprise a 'faceless o[r] unresolved class' of consumers." *Colpitts*, 527 F.

Supp. 3d at 587 (quoting *Sarr v. BEF Foods, Inc.*, No. 18CV6409ARRRLM, 2020 WL

729883, at *6 (E.D.N.Y. Feb. 13, 2020)); *see Clemmons v. Upfield US Inc.*, No. 22-CV-

355 (PKC), 2023 WL 2752454, at *10 (S.D.N.Y. Mar. 31, 2023) (complaint alleging the

defendant "ha[d] a 'duty to truthfully represent' the Product on account of the company's

'special knowledge and experience' and market position as a 'trusted company, known

for its transparent labeling'" did not plausibly allege a special relationship). The "only

described contact between the parties is that [Plaintiff], like many other consumers,

viewed and purchased [Defendant]'s product. This indirect, attenuated relationship is

insufficient to impose a duty upon [Defendant]." *Clemmons*, 2023 WL 2752454, at *10;

*see also Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 176 (S.D.N.Y. 2022)

("Plaintiff's allegations here only describe a relationship between Plaintiff and Defendant

which is that of an ordinary buyer and seller—which does not give rise to the kind of

special relationship necessary to maintain a claim for negligent misrepresentation.").

The Court therefore recommends that Plaintiff's negligent misrepresentation claim be

dismissed.[12]

## VI.    FRAUD

To state a fraud claim under New York law, "a plaintiff must allege '(1) a material

misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an

intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes

damage to the plaintiff.'" *Howze*, 2023 WL 122307, at *6 (quoting *Wynn v. Topco*

*Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *7 (S.D.N.Y. Jan. 19, 2021)). A

claim of fraud "must be alleged with the particularity required by Rule 9(b), Fed. R. Civ.

P., which 'requires that the plaintiff (1) detail the statements (or omissions) that the

plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the

---

[12] Even if Plaintiff has adequately alleged a special relationship, her claim is barred under New York's economic loss rule. Under New York's economic loss rule, "a plaintiff may only assert a claim for negligent misrepresentation if he or she alleges personal or property damage, as opposed to economic loss." *Gordon v. Hain Celestial Grp., Inc.*, No. 16-CV-6526 (KBF), 2017 WL 213815, at *4 (S.D.N.Y. Jan. 18, 2017). Here, the "only cognizable injury alleged in connection with [P]laintiff's negligent misrepresentation claim is economic loss, i.e., that plaintiff and the putative class members purchased products they would have otherwise purchased at a lesser price or not at all." *Id.* Thus, "[i]n the absence of any alleged personal or property damage, the economic loss rule bars [P]laintiff's negligent misrepresentation claim." *Id.*; *see Suffolk Cnty. v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984) ("New York law holds that a negligence action seeking recovery for economic loss will not lie."); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (dismissing negligent misrepresentation claim because plaintiff alleged economic loss, but not personal or property injury).

statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Santiful*, 2022 WL 268955, at *6 (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015) (quotation marks omitted)). While "Rule 9(b) permits a plaintiff to allege scienter generally," "the Second Circuit has 'repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent.'" *Id.* (quoting *United States ex rel. Tessler v. City of New York*, 712 Fed. App'x 27, 29 (2d Cir. 2017)) (summary order). Accordingly, "conclusory assertions of intent are sufficient 'if supported by facts giving rise to a strong inference of fraudulent intent.'" *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579 (2d Cir. 2005) (quoting *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir. 1993)). A strong inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006). But the "simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendant['s] 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis v. Hain Celestial Grp., Inc*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (quoting *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013)).

Here, Plaintiff fails to allege the requisite fraudulent intent. She alleges that Defendant "misrepresented and/or omitted the attributes and qualities of the Product, that they could make the number of cups promised on the label." Dkt. 1-1, at ¶ 97. Further, according to Plaintiff, "Defendant's fraudulent intent is evinced by its knowledge

that the Product was not consistent with its representations, based on the data regarding the Product's servings and measurement data it possessed." *Id.* at ¶ 98. But Plaintiff's "conclusory assertion[] of intent" is insufficient because it is not "supported by facts giving rise to a strong inference of fraudulent intent." *Aetna*, 404 F.3d at 579. Plaintiff "does not set forth any facts that establish a fraudulent motive on the part of the defendant, or that strongly suggest reckless disregard for accurate labeling." *Devey*, 2022 WL 6827447, at *8.

Moreover, Plaintiff's allegation that Defendant knew that the Product was inconsistent with its representations does not establish fraudulent intent because "simple knowledge that a statement is false is not sufficient to establish fraudulent intent." *Davis*, 297 F. Supp. 3d at 337; *see Howze,* 2023 WL 122307, at *6 (allegation that *"Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations"* insufficient to allege fraudulent intent); *Santiful*, 2022 WL 268955, at *7 (allegations that manufacturer failed to accurately describe a product on its label and in its ingredient list, when it "knew its statements were neither true nor accurate" and would mislead consumers, were insufficient to give rise to an inference of fraudulent intent); *Colpitts*, 527 F. Supp. 3d at 585–86 (same for allegation that "[d]efendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate"); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021) (conclusory allegations that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not

true" insufficient to allege fraudulent intent). Therefore, the Court recommends that

Plaintiff's fraud claim be dismissed for failure to state a claim.

## VII.    UNJUST ENRICHMENT

To state a claim for unjust enrichment, a plaintiff "must allege that (1) the other

party was enriched, (2) at that party's expense, and (3) that it is against equity and good

conscience to permit the other party to retain what is sought to be recovered." *Georgia*

*Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012) (internal quotation marks and

citation omitted). But an unjust enrichment claim "is not available where it simply

duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New*

*York, Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012).

Plaintiff alleges that "Defendant obtained benefits and monies because the

Product was not as represented and expected, to the detriment and impoverishment of

plaintiff and class members, who seek restitution and disgorgement of inequitably

obtained profits." Dkt. 1-1, at ¶ 99. Defendant argues that Plaintiff's unjust enrichment

claim should be dismissed because it merely duplicates her tort claims. Dkt. 3-1, at 23–

24. In response, Plaintiff contends that Fed. R. Civ. P. 8(d)(2) allows her to plead

alternative claims. Dkt. 7, at 16. It is "certainly true, as Plaintiff argues, that [s]he may

plead unjust enrichment in the alternative to h[er] other claims." *Nelson v. MillerCoors,*

*LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017). But "it is equally true that, even pleaded

in the alternative, claims for unjust enrichment will not survive a motion to dismiss where

plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of

their other causes of action." *Id.*; *see also Hain Celestial Grp.*, 2017 WL 213815, at *7

("Although Rule 8(d) permits a plaintiff to plead alternative—and even inconsistent—

theories of liability, . . . an unjust enrichment claim must be dismissed when it entirely

'duplicates' other tort or contract claims.") (internal citations omitted).

Here, Plaintiff's unjust enrichment claim fails because it is based on the same facts underlying her statutory and tort claims. *See, e.g.*, *Devey*, 2022 WL 6827447, at *9 (dismissing unjust enrichment claim because it "relie[d] on the same operative facts as [plaintiff's] other claims"); *Hain Celestial Grp.*, 2017 WL 213815, at *7 (dismissing unjust enrichment claim because it was based on "the very same conduct underlying her other claims"); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) ("[B]ecause [plaintiff] has not shown that his unjust enrichment claim differs from his contract and tort claims, it must be dismissed."); *Ebin v. Kangadis Food Inc.*, No. 13 CIV. 2311 JSR, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (dismissing unjust enrichment claim where plaintiffs "failed to explain how their unjust enrichment claim [was] not merely duplicative of their other causes of action"). Thus, the Court recommends that Plaintiff's unjust enrichment claim be dismissed.

## VIII.    STANDING TO SEEK INJUNCTIVE RELIEF

Defendant also moves to dismiss Plaintiff's claim for injunctive relief, arguing that she lacks standing. *See* Dkt. 3-1, at 24–25. In response, Plaintiff withdrew her request for injunctive relief. Dkt. 7, at 7 n.1. Therefore, the Court recommends that Plaintiff's request for injunctive relief be dismissed.[13]

---

[13] Even if Plaintiff had not withdrawn her request, she plainly lacks standing to pursue injunctive relief. The Second Circuit "has determined that, absent an intent to 'purchase the offending product in the future,' a plaintiff in a deceptive business practice action lacks standing to seek injunctive relief." *Howze*, 2023 WL 122307, at *7 (quoting *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018) (summary order) (alterations omitted)). And because "a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, 'there is no danger that they will again be deceived by them.'" *Davis*, 297 F. Supp. 3d at 338 (citation omitted). Moreover, because Plaintiff "does not individually have standing to seek injunctive relief,

IX.    **LEAVE TO AMEND**

In her opposition brief, Plaintiff requested, in the alternative, that the Court grant leave to file an Amended Complaint. Dkt. 7, at 16. Although Rule 15(a) of the Federal Rules of Civil Procedure "provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (citation omitted). It is well established that "leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). An amendment to a pleading "is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Further, a plaintiff "need not be given leave to amend if [she] fails to specify . . . how amendment would cure the pleading deficiencies in [her] complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

Here, the Court finds that any amendment to Plaintiff's claims for breach of express and implied warranties, MMWA, negligent misrepresentation, fraud, unjust enrichment, and injunctive relief would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [Plaintiff]'s causes of action is substantive; better pleading will not cure it. Repleading would thus be futile."). Moreover, Plaintiff has not specified how amendment would cure the deficiencies in these claims. *See TechnoMarine*, 758 F.3d at 506 (affirming district court's denial of leave to amend because plaintiff "entirely failed to specify how it could cure its pleading deficiencies"); *Trane Int'l Inc. v. Calentadores de Am., S.A. de C.V.*, No. 21CV4497 (DLC), 2022 WL

---

she also lacks standing to seek injunctive relief on behalf of any class." *Howze*, 2023 WL 122307, at *8.

1523527, at *6 (S.D.N.Y. May 13, 2022) (denying leave to amend because plaintiff failed to "provide[] any proposed amendment or explain[] how its theory could be cured by additional allegations"); *Maurizi v. Callaghan*, No. 20-CV-922-JLS-LGF, 2022 WL 1444182, at *3 (W.D.N.Y. May 5, 2022) (denying leave to amend where plaintiff "ha[d] not identified how he would amend"); *Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 447–48 (W.D.N.Y. 2021) (denying leave to amend because plaintiff sought relief "without attempting at all to explain how her [proposed amendments] would cure any of the pleading deficiencies"). The Court therefore recommends that Plaintiff's request for leave to amend be denied.

## CONCLUSION

For the above reasons, the Court RECOMMENDS that Defendant's motion to dismiss (Dkt. 3) be GRANTED IN PART and DENIED IN PART. The Court RECOMMENDS that the motion to dismiss Plaintiff's GBL §§ 349 and 350 claims be DENIED, and the motion to dismiss all remaining claims (express and implied warranty, MMWA, negligent misrepresentation, fraud, and unjust enrichment) be GRANTED for failure to state a claim. Further, the Court RECOMMENDS that Plaintiff's request for leave to amend be DENIED.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.**

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:      July 6, 2023**
**             Buffalo, New York**

                                   *s/ H. Kenneth Schroeder*
                                   **H. KENNETH SCHROEDER, JR.**
                                   **UNITED STATES MAGISTRATE JUDGE**